STOULIG, Judge.
Plaintiffs[1] obtained a judgment against defendant Sam Puglise for $1,421.83, rep-senting the value of dirt fill which he unlawfully removed from their property. Puglise impleaded the Parish of Jefferson and two of its administrative subdivisions (the Department of Sanitation and the Department of Roads and Bridges) as third party defendants and was awarded a judgment of $710.91 against them in contribution on a finding that the director of sanitation had mistakenly, but illegally, authorized the taking. From this judgment only the third party defendants, hereinafter referred to collectively as the Parish, have appealed.[2]
This controversy arose in November, 1967 when two of the plaintiffs, while inspecting a vacant tract of land owned by their family, discovered Puglise removing *108 dirt fill from their land. The soil in question was spoil dredged from a drainage canal that intersects the Justice property.
Under the authority of LSA-R.S. 38:113, the drainage department of the Parish periodically dredges and cleans a system of canals, including that segment on plaintiffs’ land, over which the Parish has a servitude for the purpose of controlling drainage. In 1967, the Parish dredged the canal crossing plaintiffs’ property and deposited the spoilage removed on one edge of the canal, forming a levee or mound.
Edward Pennington, superintendent of drainage for the Parish, testified he thought the Parish could legally dispose of this fill by giving it away. Various officials pointed out the soil had to be removed (1) to prevent the canal bank from collapsing under the additional weight, and (2) to clear an access path for future dredging. By permitting a private individual to take the fill free, the Parish saved the expense of furnishing its own labor and equipment to do the job.
In any event all the litigants conceded Puglise dug and hauled dirt from the plaintiffs’ property with the authorization and approval of a Parish official. What is disputed is the amount of the fill taken and its value.
As to the amount, plaintiffs attempted to establish quantity by the expert testimony of Joseph J. Krebs, a civil engineer and surveyor. He testified he made a topographical surve> of the Justice tract on July 11, 1969, almost two years after the taking, and determined 1,692.66 cubic yards “in place” had been removed. He explained that “in place” fill, compacted by nature, increases 20 to 30 percent in volume once excavated, so that 1,692.66 “in place” cubic yards would yield 2,031 cubic truck yards.
In passing we note the Krebs’ testimony, more precise than the sheer guesswork offered by other witnesses, is not conclusive in fixing the quantity of fill taken by Pug-lise. This is so because prior to the November hauling that forms the basis of this, suit, the Parish itself had dug and hauled dirt from the Justice tract during the summer. The amount taken is unknown. Plaintiffs’ claim against the Parish for the summer taking was compromised at $785 based on payment at the rate of 50 cents per cubic yard “in place.” The Krebs survey calculates total cubic yardage taken and does not (and could not possibly) distinguish between mud removed by the Parish in the summer and mud taken by Pug-lise in November.
Even though we find the proof as to quantity taken lacking in preciseness, in view of the limited scope of this appeal and the result we reach, we will accept Krebs’ estimate of 1,692.66 cubic yards.
The value of the fill is not established. Although Krebs said the delivered price of fill in 1967 at the job site ranged between $1.15 and $1.25 per cubic yard, he conceded he did not know how much the landowner was paid per cubic yard for his mud. He was unable to state how much of the unit price of $1.25 per yard represented the cost to excavate, haul, deliver, and spread the fill and the profit factor involved. Thus it is impossible from the information in the record to compute the value of the “in place” mud.
In his written reasons for judgment the trial judge explained he used a delivered price of $1.20 per cubic yard and reduced this by 30 percent. Thus he arrived at a figure of 84 cents per cubic yard to compute the value for the “in place” fill.
Appellants now challenge the basis of this computation in their specification of errors. The other two issues they raise are (1) the correctness of the trial court’s determination that the Parish had no authority to dispose of the spoil dredged from the canal; and, (2) alternatively, the failure of the trial court to allow a set-off of $785 against the judgment which the Parish had previously paid to the Justice familv.
*109 We first consider the question of ownership of the soil dredged from the canal. The case of Scott v. Red River-Bayou Pierre Levee & D. Dist., 7 So.2d 429 (La.App.2d Cir.1942), discussed Act 61 of 1904 (LSA-R.S. 38:113) and determined that the authority granted to the governmental agency over private property was restricted to maintaining the efficency of the public drainage channels and did not vest the ownership in the levee or drainage district. As pointed out in the case of Grayson v. Commissioners of Bossier Levee District, 229 So.2d 139 (La.App.2d Cir.1969), the Scott case did not hold that Act 61 of 1904 created an additional servitude for drainage other than the one provided by LSA-C.C. art. 665. Under the reasoning of Scott, we conclude in this case the spoil dredged from the canal on the Justice property is one of the rights of ownership vested in the plaintiffs, and therefore the Parish had no authority to give it away.
We next consider appellants’ complaint that the evidence fails to establish the value of the fill taken at 84 cents per cubic yard.
The formula used by the trial court is not a correct basis for determining value. It erroneously assumes that the 30-percent differential in volume between the impacted and the excavated soil would be equal to the cost and expense to excavate, haul, deliver and spread a cubic yard of fill. Accordingly it reduced the delivered price by this percentage in arriving at its valuation of the dirt.
It is suggested a more appropriate figure would be 50 cents per cubic yard, because this is the amount plaintiffs accepted in payment for the fill removed by the Parish in the summer of 1967. We agree. Plaintiffs bore the burden of proving the value of the fill removed and this they failed to do. The record does indicate one of the plaintiffs quoted 50 cents per yard as the market value of fill “in place” in 1967. (Parish Exhibit A.) In the absence of any other valid basis we think this figure should be used to compute the Parish’s liability for their one-half contribution. Multiplying 1,692.66 by 50 cents we calculate the judgment value is properly $846.33 and the contribution due by the Parish to Puglise is $423.16. Puglise did not appeal and therefore the original award in the sum of $1,421.83 is binding as to him.
We use the “in place” price per cubic yard to make out computation because, unquestionably, Puglise was acting in good faith under the mistaken impression that he was properly authorized to take the fill. Under the case of Gallo v. Sorci, 221 So.2d 570 (La.App. 4th Cir.1969), the owner is entitled to the “in place” value of the fill if it is found the taking is in good faith.
Finally, the Parish contends it has previously paid $785 to the plaintiffs, which fairly compensates them for 1,570 yards of the 1,692.66 cubic yards their expert calculates were taken. We cannot allow a credit based on set-off in this proceeding even though we recognize the merits of the applicants’ logic. The judgment appealed from is a judgment in favor of Puglise, not the original plaintiffs. A payment made to the original plaintiffs cannot be urged as a set-off in satisfaction of the judgment in favor of the third party plaintiff. For the principle of set-off to apply, the payment for which the Parish now seeks credit must have been paid to the judgment creditor. In this case it was not. This is not to say that plaintiffs may be twice compensated. We simply hold that with the present posture of this proceeding this court cannot apply the credit sought.
For the reasons assigned, the judgment of the trial court awarding Sam Puglise $710.91 against the third party defendants is amended to reduce the amount to $423.-16. In all other respects the judgment appealed from is affirmed.
Amended and affirmed.

. Annie Justice, Hilda Justice, wife of Emery Stone, Helen Justice, Gwynne Justice Johan-son, William M. Justice, Jr., Miller Justice, Lloyd Justice and Gloria Justice Wagner.

. Plaintiffs’ suit against the codefendant, Clyde Bourgeois, Jr., was dismissed by the trial court and no appeal was taken therefrom.